May it please the Court, my name is Jonathan Montag representing Mr. Al-Bark. This case is a case that started off as an asylum case and has morphed into a case that now involves whether this case should have been remanded to the Immigration Court so Mr. Al-Bark could receive a permanent residence green card based on the fact that his wife applied for one and in fact now has one. This is a variation on a very standard administrative issue or matter where the breadwinner of the family is allowed to adjust status to permanent residence and the wife and other family members' children are also allowed to. In this case the distinction is that Mr. Al-Bark was in Immigration Court so his papers couldn't be filed in the same venue as the wives that had to be filed in Immigration Court. Actually at the Board of Immigration Appeals at this point. And the Board of Immigration Appeals wouldn't entertain his adjustment of status application because in his statuses following with his wife, the wife they said needed to get a green card first before he could properly file his adjustment of status application and we assert that that wasn't... No dispute about that. Excuse me? No dispute about that, right? You can't adjust status until the wife... No, but that's... He can't even apply to adjust status without her having a green card. There is a dispute about that, Your Honor, because he can apply according to the statute at 8 U.S. Code 1153D It says that he stands in the place of his spouse as an applicant. All the family members are allowed to apply at the same time. So whether he could be adjudicated the moment he applied is a separate issue from whether he was allowed to apply when he did. We assert that it was a prima facie valid application at the time he made it even though he had to wait for his wife to be approved first. And his wife wasn't approved first not because of any fault of hers but because of the processing times of the administrative level at the California Service Center. She applied January 2002 and her case wasn't approved until September 30th, 2003. Is any action taken at the time of her application? In other words, what do we know when she applies? Has any immigration authority made any review of her application or anything like that? It's just that she applies. She applies and then it's adjudicated by the adjudicators at the California Service Center. And that came 20 months later? Yes, Your Honor. And actually the law was sunsetting on October 1st, 2003. So they were frantically, the history is they were frantically at the service center trying to get everything done at the last minute. And Mrs. Albart's attorneys were trying to pressure the service center to get hers done but it fell on deaf ears. But we assert that it was validly and it was a prima facie properly filed case when he filed it at the BIA. Now for the BIA to say that it wasn't prima facie proper we believe is incorrect. So the second question is did they have any basis then to not remand the case back to the immigration court in Imperial California if it was validly filed? And they didn't articulate any reason. They could have said we don't want to continue this case or something but they didn't. All they said it wasn't prima facie properly filed and that's not a correct interpretation of the law. Well they adjudicated themselves rather than remanding. Excuse me, Your Honor? They adjudicated themselves rather than remanding. Rather than sending it to the immigration court. No. They would have to. They decided they adjudicated themselves. The BIA? Yes. No, Your Honor. I think what they would do is send it back to the immigration court to just decide. I understand what they would do, what you don't have them do. But what they in fact did do was adjudicate themselves. That's correct. They said that. No authority for them to adjudicate themselves? I think that. I mean, sure, they could have done something else. Well, if they did adjudicate it for themselves, then they would have had to have articulated some basis for why they denied it as adjustment of status. She didn't have a green card at the time. Yeah, but there's ample authority in the administrative law that when there's some kind of delay because of other factors that a continuance is proper. Now, this case has been pending since 1991 when he first applied for asylum. So why suddenly? The problem is he didn't apply for a stay of his voluntary departure. That wouldn't have affected the remand issue. And it still wouldn't affect the remand issue. It would have left him eligible for adjustment of status now. He is eligible for adjustment of status now because. Has his voluntary departure lapsed? Yes, but I think this Court and its precedent in Desta has said that if a person properly applies for voluntary departure or for a stay of removal within the 30-day period, which he did because he filed it in conjunction with his petition for review, that also stays the voluntary departure period. So I think this Court has taken us beyond that problem. Is Desta still good law after the real idea? Yes, Your Honor. My understanding is Desta is the law of the circuit. Is it still good law after the real idea? Desta is a case on the mind, isn't it? No. Desta is a very recent case. I don't actually have the site with me, but Desta is the law of the circuit. I think that if this Court has the authority under Desta to grant his motion to extend his voluntary departure period, if it did that, then this Court would have to remand the case back to the BIA because it was a properly filed application when he filed it. Then there would be no bars to his adjusting status, and the BIA couldn't think of any reason to say no at this point as far as that. This is a transitional rules case, isn't it? He was issued an order. He was. It is a traditional. It came before Ira. Okay. So if the real idea doesn't change anything, there's a case called Elyon, which says that in a transitional rules case, the voluntary departure period is extended when you petition for review. Yeah. I don't actually think there's an issue anymore with that. I mean, when I was briefing this, we were in the middle of this area. A lot of water has gone over the dam since then, yeah. And I think Desta solved that whole problem. I'll explore it with your opponent. Thank you. So even if this Court were to think that there was something about the filing that meant that since it, even though it was properly filed, that the board had some sort of authority to not want to adjudicate it or to deny it because the wife didn't receive hers yet, I think that the Court will find there's a lot of precedent for waiting. The simple act of waiting a few months would have solved the whole problem. And in the cross-chargeability cases, which I cite, which is matter of N and matter of J, when a visa is not available to somebody because the spouses are of different nationalities and one nationality is current and another nationality is not, because they all come together, the regulations and the administrative rules say that they can credit the numbers from the available nationality to the unavailable one, with the motivation being to prevent family separation. And similarly, when it often happens that a case is filed with the agency and then the numbers retrogress, which means even though there's a visa available today when he files, they run out of numbers the next day. And in those cases, the BIA has said, and the operating instructions of the agency say, we just wait until the numbers come back. And that's the normal procedure. And even in cases where we need an approved petition and it hasn't been approved yet, and in this case there was an approved petition because the husband, Mr. Bark, he gets his green card because the wife's petition is approved. Even in cases where there needs to be a separate petition filed by one spouse for the other, the BIA has said that it will wait for that petition to be approved. Now, in the government's brief, they conflate these two concepts, one where the husband is getting his visa based on the wife's petition and a separate case where the husband is petitioning for the wife and it's not approved. In this case, as I've said, there was an approved petition for both the husband and wife. But in cases where you say there's an approved petition, but this isn't at the time the board was considering. No, no. The petition was the religious worker visa that the wife had petitioned for, and that had been approved earlier before 2002. In November 2001, the immigration authorities designated the wife as a religious worker. But that was not a green card. No. That gave her an opportunity to apply for a green card. Exactly. She hadn't done that. As soon as it was approved, she was able to apply for her green card. And at that moment, the husband, under the regulations, is also allowed to apply for the green card. And they did it concurrently, except he had to do it with the BIA because he was in removal or deportation proceedings, removal proceedings. So they both did what they needed to do in the forum where they had to do it. And the regulations allow them to do this simultaneously. So even in cases of the time. Oh, I'm sorry. Thank you. May it please the Court. Donald Kuvionko responded. Your Honors, first in regard to voluntary departure, DESTA has settled that issue, and we don't believe it's any longer an issue. Does the real ID Act apply to this case? No, Your Honor. Why not? The DESTA was retroactive and said that if, when you file your petition for review, as in this case, and you seek a stay of removal, which happened here, then that preserves your voluntary departure. So there's really no longer any question that this petitioner, believe it or not, has voluntary departure. Okay. My question was whether or not the real ID Act applies to this case. This was a petition for review, Your Honor. It didn't come from a habeas in district court. I don't know of any reason why it would apply to this case. Is Your Honor thinking of something else that? Well, I thought the judicial, I thought the real ID Act applied to judicial review of orders of removal, which a PFR is. The thrust of that was in cases which had gone into, in light of the, was it the 96 or 97? 96 Act that had been going into district court in habeas. And the thrust of that was to channel those cases back to the courts of appeals and petitions for review, as had been done before that came about by virtue of the 96 Act. The board's decision in this case says that the record does not contain any evidence to show that the petitioner's wife has been granted the adjustment of status. As such, he is not under the statute prima facie eligible for the relief he seeks. Counsel, what about opposing counsel's position that he stands in the shoes of his spouse, who had been a religious worker? Well, I don't know what authority counsel's relying on for that statement. I think the petitioner in this case is trying to create some kind of exception that does not presently exist. The, he faces a formidable challenge in the statute itself, that section under the 245-I-2, which he does not even cite. Now, he does say, after stating in his brief, at least five times statements that he says shows why he filed properly. He finally, in a footnote on page 12, note 2, concedes that he cannot adjust at the time he filed his motion to remand. But he still doesn't cite the statute. The statute says that, among other things, you have to be not only admissible, but you have to have a visa immediately available. And it is basic, it's axiomatic, that he cannot even be the recipient of a visa petition until his wife is a resident. What's your authority for that statement? 245-I-2, Your Honor. And what about his reliance upon 8 U.S. Code section 1153-D for the proposition that the spouse is entitled to the same status for a priority of visa allocation? That's his argument. What's your response to that? Was that the statute that was cited in the opening argument? Yes. I didn't hear that. What was the section again, please? 8 U.S.C. section 1153-D. Well, I'm going to try to find it and see what he's talking about. 1153-C. D. D. I have the Matthew Bender, which is, as far as the notes are concerned, numbered with the INA Act. So why are you looking for it? Let me read to you what it says, and then you tell me what you think about that. A spouse, then some language that doesn't apply. It shall, if not otherwise entitled to an immigrant status and the immediate issuance of a visa, shall be entitled to the same status and the same order of consideration if accompanying or following to join the spouse. In paraphrasing, that's what it says. That does not contradict what I said whatsoever, because it says following to join, et cetera. The person you're joining, your spouse, still has to have the status that's required before he or she can petition for you to follow and join. She had no ability to petition for him. And we've got to remember, because it's very misleading, that a visa petition, in spite of that common name, is a classification application. It says for immigration purposes, we recognize the relationship. That's what it does. It doesn't give you anything beyond that. It doesn't give you residency. It doesn't give you the visa at the consul. Those require another step. It's preliminary. So that statute in no way contradicts what I said, and it doesn't contradict 245I2 at all. What does any of this matter anymore? If they've conceded that he's got voluntary departure, why can't he go and petition now for adjustment? I mean, if his voluntary departure period is still open, he now has a green card, right? Well, his problem was he was in proceedings, and he had — I understand. He was — And he had a — But he can apply again. He's not barred from applying again. He has a problem with time. He's far out of time now for a motion to reopen. It would require at this point he would have to persuade the agency to join him to overcome the time limitation. What can he find in the application? He has to reopen his case, Your Honor. Was it a 90-day or something? Yes, Your Honor. Yes. What — if he voluntarily departs, what restrictions are there on reentry? He has potentially — now, I say that carefully. He potentially has to get a waiver, a hardship waiver, because of Section 212A9B1, which says that there are two sections there, and they relate to how long you were unlawfully present in the United States. One is if you were here less than a year, and the other is more than a year. And each dictates that if you leave and try to come back, that in the first instance, if it's within three years, you have to get a waiver. In the second instance, if — within 10 years, you have to get a waiver. Now, it appears to me on this record that if he falls under any of those, it would be the first, because on this record, there's a gap between when he fell out of status and when he applied. However, he says — and there's no — but it's not in the record. It was never really an issue. He says he applied before he fell out of status, but the application was lost or something happened to it. If he can establish that, then — because the same section I read you in 212A9 says that when you apply for asylum, that it tolls that time period. So if he did apply before he fell out of status, the statute wouldn't apply at all. I guess now the situation — I mean, it's extra record. We recognize that the board acted when it did and what it — on what it had before it. But now we've got somebody who is eligible to stay here. And we're — you know, he's not an aggravated felon or anything. We're working as hard as we can to throw him out so that he won't be here with his family. And I just wonder if there's any room for negotiation or — Well, you know, like I said, he — and as counsel and I discussed before the case was called this morning, he's going to have to persuade the appropriate district counsel to join him in a motion. And if that happens, then it will be reopened. If he applies out of time, then it's not likely that it will be reopened. I wouldn't give it much chance of success under those circumstances. And I understand Your Honor's concern. But the problem is, is that when he sought — when he filed this motion to remand, he was not eligible. And I don't know why he did that. He should have waited. I'm sorry, Your Honor? He should have waited. Waited? Yes. Yes, Your Honor. And if he just waited, he'd be okay. He — well, he still perhaps would have run into the time problem on motions to reopen, but he might have been in a better position. I don't know. I can't speak for the district counsel. He might have been in a better position to persuade them to join him at that time. I have no idea, you know, what they're going to — Well, I'm actually thinking about filing his adjustment of status application. He should have waited with that. There was no hurry for him to file it when he did. No, there — well, I don't know why he filed it when he did. I mean — He could have waited for her to adjust her status, and then wherever he was in the process, he could have filed an adjustment of status application at that point, and then he would have been just entitled to adjustment of status, right? There wouldn't have been any difficulty by the law? Well, we wouldn't have gotten into this, if I may say so, false issue of eligibility, because it's as plain as it can be that he wasn't eligible. He put everything in the wrong place. He wasn't even the recipient even of a visa petition, much less an approved visa petition. If he had had an approved visa petition — All right. That's not what I asked. You know, I asked a question, and you gave me — you answered something else you wanted to answer. Well, could I — could I try again? If he had filed later, if he had filed later, if he had waited to file his adjustment of status application after his wife's gotten a green card, then he would have just been entitled to adjustment of status. There would have been no impediment at that point. He would have run into the time for reopening. That would have been a problem, because — I thought this was pending. His wife, according to what they say — I mean, it's not in the record, but they say that she was finally granted adjustment in September of 2003. What was going on with his asylum application at that point? At that point, it would have been beyond the time limit of the BIA's decision for reopening, and he would have been out of time. And at that time, this petition, of course, was still pending. I'm sorry. You didn't answer my question. What would have been going on with his asylum application at the time? At the time, his wife was adjusted. Yes. It was a pending review here. He filed his petition for review in May of 2003, and she — He would have been pending review here. Yes. And I guess he can't — when it's here, he can't move to — He can. He can move, but — He has to move to reopen? Yes. Or it would take more than 90 days for him to wait for his wife to get a green card, and you're saying that his time to reopen would expire. Yes. But what I'm not understanding is why does he have to reopen? Why can't he just file an adjustment of status? He has a final order, and since he's in proceedings, he has to reopen his order. He has to reopen the proceedings to pursue that adjustment when you're in proceedings. Can he reopen while the case is here? Can he petition to reopen while the case — If he had been able to file timely, yes. It happens all the time. When petitions are pending here. He can go to the BIA, ask for a reopen, see if it adjusts the status. Yes. It happens all the time. I mean, here, for example — Except you're saying it's too late to reopen. If it's not too late, yes. Counsel, when is a visa immediately available for purposes of Section 245? It means that the visa petition, the classification petition, has been filed and approved, and it means that your priority date is current, if you have a priority date. If you're an immediate relative, in some instances, there is no priority date. In this instance, I think there would have been a fourth preference. Is that correct? Yes. No, a fourth preference, and it was current. It was current at the time that he filed, according to something in the record, but he was not the recipient of the visa petition. So but for the fact that he was not the recipient, the visa would have been immediately available to him? Yes. Okay. Yes. What was the status of his asylum application at the time she — his wife filed for the adjustment status? She filed for adjustment in January of 2002. Her visa petition from her employer was approved in November of 2001. At that point, his appeal was pending at the BIA. And if he dropped that, the IJ's order would become final, and so he'd be subject to deportation. He would have been subject to deportation. If he withdrew his appeal, yes, Your Honor. Yes. Okay. All right. Thank you. The issue about his returning to his own country is the fact that he does have a fear of returning to Jordan, and there's also the complications of whether a Palestinian with a Jordanian password could even get himself back to Jordan nowadays. And we don't want the court to lose sight of the fact that there is an underlying asylum application and he has a legitimate fear. The last thing is, Justice Rawlinson asked about the pending petition. He, because of that 1153D, stands in the place of his wife. So if his wife has a current valid petition, because he's the spouse, he has a current valid petition, and he had every right to file it where he did, when he did, by his former counsel, because he had a valid petition at that point, and the only forum he could file it in was the immigration court, because once you're stuck in the immigration court and the BIA, you can't go anywhere else. It is a valid petition, but it can't be adjudicated in his favor because it is a petition based upon her green card. And his status is being adjusted in light of her green card, which doesn't exist yet. Yeah, but that doesn't mean that he needs to file it, just like a child needs to file the green card. It doesn't wait for mom and dad to get theirs before the child files it. They all file at the same time. I remember it well. In the proper form. And if your dad, for some reason, he didn't get his tetanus shot, they don't round up the kids and deport them because it's not a validly approvable visa and application at that instant. They say, come back in a week. They don't deny your case and tell you you have to leave the country and leave your wife. And there's ample precedence here for them giving the people the time to get their case approved. They certainly can do it, and they might have done it. The question is whether we have authority to tell them they were wrong in not doing it. Well, I think because this Court, because the BIA didn't give an explanation for why it was not giving a continuance, they should read, the Court could remand to give an explanation for why you didn't give the continuance when there's a valid petition. And if you don't have any good reason for not giving the continuance, you should give them a green card because there's no statutory bars to getting it now. Thank you, Your Honor. Okay. Thank you. The case is sorry. It will stand submitted. Our next argument is Naylor v. Candelaria.
judges: Canby, Kozinski, Rawlinson